UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAFECOVER ROOFING LLC, | CASE NO. 3:20-cv-06212-DGE |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) |
| v. | |
| PRO-COVER ROOFING INC. et al., | |
| Defendants. | |

Before the Court is Plaintiff's Motion for Contempt, Sanctions, and Modification of Permanent Injunction. (Dkt. No. 19.) For the reasons set forth below, Plaintiff's motion is GRANTED in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2020, Plaintiff Safecover Roofing LLC ("Safecover") filed a complaint in this Court. (Dkt. No. 1.) Plaintiff asserted causes of action against Defendants Pro-Cover Roofing, Inc. ("Pro-Cover") and Vincente Nolasco-Ignacio for infringement of Safecover's federal and state trademarks and trade name, unfair competition, and violations of Washington's

ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) - 1

Consumer Protection Act ("CPA"). (*Id.* at 7–9.) Plaintiff also sought injunctive relief along with an order: 1) requiring Defendants to deliver up for destruction all materials bearing Safecover's trademarks; 2) transferring any domain name incorporating Safecover's trademarks to Safecover; and 3) requiring Defendants to file with this Court and serve on Safecover within 30 days a report in writing under oath setting forth in detail the manner and form in which Defendants had complied with the terms of the ordered relief. (*Id.* at 9–12, 14.)

Defendants did not appear or otherwise respond to Plaintiff's complaint, despite being properly served. (*See* Dkt. Nos. 5, 6.) On January 20, 2021, Plaintiff filed a motion for default against Defendants. (Dkt. No. 9.) On January 21, 2021, the Clerk's office entered default against Defendants for failure to plead or otherwise defend. (Dkt. No. 12.) On April 5, 2021, Plaintiff filed a motion for default judgment. (Dkt. No. 13.) On April 8, 2021, the Court issued an order granting Plaintiff's motion in part. (Dkt. No. 17.) The Court granted Plaintiff's motion as to trademark and trade name infringement and enjoined Defendants from using the trade name "Pro-Cover Roofing," the logo designs at issue, or any other confusingly similar marks. (*Id.*) The Court denied Plaintiff's motion as to attorney fees and costs. (*Id.*)

Plaintiff argues Defendants were clearly aware of the Court's April 8, 2021 order, having been sent a copy by the Court and by Plaintiff via certified mail. (Dkt. Nos. 19 at 8; 20 at 2.) Plaintiff contends Defendants have continued to infringe Plaintiff's trademarks despite the Court's specific and definite order granting judgment in favor of Plaintiff as to trademark and trade name infringement and the Court's injunction prohibiting Defendants from using the infringing marks. (Dkt. No. 19 at 8.)

Plaintiff argues Defendants have instituted a series of cosmetic changes to certain aspects of their business in an effort to conceal their ongoing infringement and evade the Court's order.

ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) - 2

(Dkt. No. 19 at 3–7.)  Specifically, Plaintiff alleges Nolasco-Ignacio converted Pro-Cover Roofing from a corporation to a limited liability company in November 2022.  (*Id.* at 4.) Plaintiff further contends Defendants abandoned an infringing domain name and acquired a nearly identical domain name reflecting Pro-Cover's new status as an LLC in early 2023.  (*Id.*) Plaintiff argues Defendants ported over virtually identical content from the old website and continued using the infringing marks.  (*Id.*)  Plaintiff claims Defendants slightly modified their Facebook page, but continued using the infringing marks there as well, including on vehicle marketing signage.  (*Id.* at 5.)

On August 29, 2025, Plaintiff sent a letter to Defendants via email and certified mail outlining these apparent violations of the Court's April 8, 2021 order and demanding Defendants cease using the infringing marks.  (Dkt. No. 20-1 at 17–19.)  Defendants did not respond to the letter.

On November 14, 2025, Plaintiff filed the instant motion, which requests the Court find Defendants in contempt for failure to comply with the Court's April 8, 2021 order.  (Dkt. No. 19.)  Plaintiff further seeks modification of the Court's order in light of Defendants' non-compliance and also seeks contempt sanctions, including attorney fees and costs associated with bringing this motion.  (*Id.*)  Defendants have not responded to Plaintiff's motion.

## II.    LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."  *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)

ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) - 3

(quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck*, 10 F.3d at 695 (internal citation and quotation marks omitted).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (internal citation omitted). Defendants may avoid contempt by demonstrating an inability to comply with the order, *id.*, or substantial compliance with the order, *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989). "[W]here . . . the affidavits offered in support of a finding of civil contempt are uncontroverted," a district court need not hold an evidentiary hearing on the matter. *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998).

## III.    DISCUSSION

### A.    Civil Contempt and Sanctions

Plaintiff argues Defendants should be found in contempt. (Dkt. No. 19 at 7–9.) The Court agrees, and finds contempt warranted. The Court's order is specific and definite: it requires Defendants to cease use of the trade name "Pro-Cover Roofing," the logo designs at issue, or any other confusingly similar marks. (Dkt. No. 17.) Plaintiff has established by clear and convincing evidence that Defendants have continued using the Pro-Cover Roofing trade name and the logo designs at issue in defiance of the Court's order. (*See* Dkt. No. 20-1.)

As Defendants have been found in contempt, the Court next addresses Plaintiff's argument for sanctions in the form of: (1) a $500 per day fine; and (2) an award of attorney fees and costs. (Dkt. No. 19 at 13–15.) "Although the district court generally must impose the

ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) - 4

minimum sanction necessary to secure compliance . . . the district court retains the discretion to establish appropriate sanctions." *United States v. Bright*, 596 F.3d 683, 696 (9th Cir. 2010).

"[C]ourts have long imposed civil contempt sanctions" for the purpose of "'coerc[ing] the defendant into compliance' with an injunction or 'compensat[ing] the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). The sanctions requested by Plaintiff comport with these goals. *See United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (per diem fines may be used to coerce a party into compliance); *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003) ("attorneys' fees are an appropriate component of a civil contempt award").

The Court therefore imposes a per diem fine of $500 for each day of noncompliance with the Court's April 8, 2021 order, to begin to accrue 14 days after Plaintiff serves a copy of this order on each Defendant by personal service. Plaintiff shall file proof of service with the Court confirming the date of personal service. The per diem fine is avoidable if Defendants comply with the Court's April 8, 2021 order within 14 days from the date of service of this Order.

Additionally, Plaintiff is directed to submit any request for attorney fees and costs, including detailed billing records, for the Court's review within 14 days from the date of this order. *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003) ("attorneys' fees are an appropriate component of a civil contempt award").

**B.    Modification of Permanent Injunction**

Plaintiff asks the Court to modify the permanent injunction in its April 8, 2021 order in light of Defendants' ongoing non-compliance. (Dkt. No. 19 at 9–13.) "A party requesting modification [of an injunction] must show 'a significant change [] in factual conditions.'" *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) (internal citation

omitted). Importantly, a "substantial violation of a court order constitutes a significant change in factual circumstances." *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016).  Defendants' ongoing non-compliance with the Court's order provides a basis for modifying the Court's April 9, 2021 as described below.

### 1. Defendants' New Entity Type and Injunction Applicability

Plaintiff asks the Court to modify its April 8, 2021 order so it will apply to Pro-Cover Roofing, LLC, the entity Plaintiff alleges Defendant Nolasco-Ignacio converted Pro-Cover Roofing, Inc. into to circumvent the Court's order, along with any other entity formed by or with his active participation, or anyone in concert therewith. (Dkt. No. 19 at 10.)  Based on the available information, the Court finds it appropriate to modify its injunction to extend to Defendants' newly formed entity, and any entity formed for the purpose of evading the Court's April 8, 2021 order.

### 2. Modify or Destroy Infringing Materials

Plaintiff asks the Court to modify its order to require Defendants or anyone acting in concert with Defendants to modify or destroy all infringing materials, and to modify the Pro-Cover Roofing company name "with any and all federal or state government or private entities to avoid all use of the infringing marks."  (Dkt. No. 19 at 10–11.)

The Lanham Act provides that the Court may order an infringing defendant to "deliver[ ] up and destroy[ ]" all infringing "labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant."  15 U.S.C. § 1118.  "Under 15 U.S.C. § 1118, the decision whether to enter a destruction order is left to the court's discretion." *Daimler AG v. A-Z Wheels LLC*, 498 F. Supp. 3d 1282, 1295 (S.D. Cal. 2020) (collecting cases). However, "[i]t has been held that where an injunction is issued under the Lanham Act enjoining

an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles, though permitted, may be unnecessary." *Id.* Here, the Court finds that an order requiring the destruction of Defendants' infringing materials is, at this stage, premature given the contempt fines and other modifications the Court is making to its April 8, 2021 order. However, Plaintiff may seek a destruction order in the future if the Court's modified order is insufficient to arrest Defendants' infringement.

3.    <u>Defendants' Infringing Domain Name</u>

Plaintiff asks the Court to order Defendants to transfer their domain name to Plaintiff and to enjoin Defendants from future attempts to circumvent the Court's order by registering any domain name including the terms "procover" or "cover," or anything similar. (Dkt. No. 19 at 12–13.)

In 1999, Congress passed the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), as an amendment to the Lanham Act to prohibit cybersquatting. *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005). The ACPA "establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.' " *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218–1219 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)). In any civil action involving the registration, trafficking, or use of a domain name brought under the ACPA, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C); *see also City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1108 (S.D.

Cal. 2012)) ("Transfer of the domain names to the owner of the mark is expressly authorized under the ACPA.").

Here, Plaintiff's complaint has not asserted a claim under the ACPA. Nevertheless, the Court is persuaded that this remedy is proper. *See Chanel, Inc. v. Lin*, Case No. C–09–04996 JCS, 2010 WL 2557503 at *12 (N.D. Cal. May 7, 2010) (concluding that "while the transfer of domain names is expressly permitted in in rem actions for cyberpiracy under 15 U.S.C. § 1125(d), an in rem action is not the exclusive remedy for a plaintiff aggrieved by a trademark violation in cyberspace").

### C.    Order for Written Compliance

Plaintiff asks the Court to order Defendants to file with this Court and serve on Plaintiff within 30 days of service of this order a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Court's order. (Dkt. No. 19 at 14.)

The Lanham Act allows courts to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable[.]" 15 U.S.C. § 1116(a). "Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction." *Id.* Given Defendants' ongoing compliance with the Court's order, the Court will modify its injunction to require Defendants to serve on Plaintiff, within 30 days of this order, a report describing the steps Defendants have taken to comply with the Court's modified injunction.

**D.    Attorney Fees and Costs**

Finally, Plaintiff seeks attorney fees and costs associated with bringing this motion. (Dkt. No. 19 at 14–15.)

The Lanham Act gives the Court discretion to award reasonable attorney fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1216 (9th Cir. 2003). A case may also be deemed "exceptional" under the Lanham Act when a defendant disregards legal proceedings. *See Sprint Nextel Corp. v. Thuc Ngo*, Case No. C 12–02764 CW, 2014 WL 869486 at *5 (N.D. Cal. March 3, 2014) (finding the case "exceptional" when defendant did not participate in this case prior to entry of default and continued to violate the injunction); *see also Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. Dec. 31, 2003) (same); *Lien v. Compusoft of Kalamazoo, Inc.*, Case No. 1:89CV-104, 1991 WL 641575, at *5 (W.D. Mich. 1991) (defendant's "lack of cooperation and disrespect for the judicial process constitutes exceptional circumstances warranting an award of attorney's fees to plaintiff in this action.").

When issuing its order and injunction in 2021, the Court found this was not an exceptional case and denied Plaintiff's motion for attorney fees and costs. (Dkt. No. 17 at 4.) The Court found it was unclear whether Defendants were actually aware of or recklessly disregarded Plaintiff's rights, and found no evidence of more nefarious intent. (*Id.*) The Court issued its order more than four years ago. Defendants have never participated in this case and have continued to violate the Court's order despite their awareness of it. The Court therefore finds this is an exceptional case that merits an award of attorney fees and costs. As identified in

ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) - 9

Section III.A *supra*, Plaintiff is directed to submit any request for attorney fees and costs, including detailed billing records, for the Court's review within 14 days from the date of this order.

## IV.   ORDER

Having considered Plaintiff's motion, and the remainder of the record, the Court finds and ORDERS as follows:

1. Plaintiff's Motion for Contempt, Sanctions, and Modification of Permanent Injunction (Dkt. No. 19) is GRANTED in part and Defendants are found in contempt.

2. If Defendants do not comply with the Court's April 8, 2021 order within fourteen (14) days after being served with a copy of this Order, Defendants SHALL pay to the Court a fine of $500 for each day of continued non-compliance.

3. Plaintiff is instructed to submit any request for attorney fees and costs incurred in investigating and prosecuting Defendants' conduct, including detailed billing records, for the Court's review within fourteen (14) days from the date of this order.

4. The Court's April 8, 2021 order granting a permanent injunction in favor of Plaintiff is MODIFIED as follows:

   a. Defendants subject to the Court's April 8, 2021 Order and Permanent Injunction (Dkt. 17) are updated to include "Pro-Cover Roofing, LLC fka Pro-Cover Roofing, Inc." along with "Vincente Nolasco-Ignacio," and the caption is modified accordingly.

ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) - 10

b. Defendants shall file with this Court and serve on Plaintiff within thirty (30) days of service of this Order a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the terms of the ordered relief.

c. Defendants are permanently enjoined from use of the SAFECOVER Trademarks, including without limitation the trade name "Pro-Cover Roofing" and the logo designs at issue, or any derivative, colorable imitation, or confusingly similar marks, as a service mark, trademark, trade name, domain name or part thereof alone or in combination with other words, symbols, styles, titles or marks pursuant to 15 U.S.C. § 1116 and other applicable law.  This includes without limitation such use on any and all signage (building, vehicles, job sites, etc.), promotional or marketing materials, websites, social media, or materials in any other format.

d. Defendants must transfer to Plaintiff and abstain from obtaining a new domain name that uses in whole or part the SAFECOVER Trademarks, including without limitation the trade name "Pro-Cover Roofing" and the logo designs at issue, or any derivative, colorable imitation, or confusingly similar marks, pursuant to 15 U.S.C. §§ 1116, 1118 and other applicable law.  If Defendants do not make this transfer within thirty (30) days of this Order, Plaintiff is authorized to provide this Order to relevant domain name authority to effectuate the transfer, or otherwise facilitate the

ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS, AND MODIFICATION OF PERMANENT INJUNCTION (DKT. NO. 19) - 11

transfer of the domain name as expeditiously and economically as possible.

Dated this 2nd day of February, 2026.

David G. Estudillo
United States District Judge